CARP v. PRIESS.

Opinion delivered November 3, 1924.

1. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict on conflicting evidence is conclusive on appeal.

2. PRINCIPAL AND AGENT—APPARENT SCOPE OF AUTHORITY—In an action on a contract of employment entered into by a son of the employer, evidence held sufficient to support a finding that the son acted within the apparent scope of his authority as agent, or, if not, that his unauthorized act was ratified by his father.

3. PRINCIPAL AND AGENT—INSTRUCTION AS TO AUTHORITY OF AGENT.— In an action on a contract of employment, refusal of an instruction correctly defining the difference between a general and special agent, and declaring that, if the person who signed the contract was only an agent as salesman for defendant, then the contract was made without authority and the finding should be for defendant, held proper as not taking into account the question of ratification nor of the apparent scope of the agent's authority.

4. PRINCIPAL AND AGENT—INSTRUCTION AS TO AUTHORITY OF AGENT.— In an action on a contract of employment, an instruction that if this contract was signed by defendant's son without defendant's knowledge or consent, but defendant allowed plaintiff to work by agreement for two weeks after disaffirmance, plaintiff could recover only for work done within that time as under a new contract, was properly refused, as disregarding the questions of apparent authority and waiver of damages by plaintiff.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; affirmed.

*Ben F. Reinberger,* for appellant.

The evidence was not legally sufficient to show that B. Carp had any authority to sign the contract in the absence of defendant. The mere statement on the part of the plaintiff that some one was a manager is not suffi-

cient in law to make him an agent. 124 Ark. 539. A
person dealing with an agent is bound to ascertain the
nature and extent of his authority. 55 Ark. 627; 92 Ark.
315; 94 Ark. 301; 53 Ark. 208. The authority of an
agent cannot be established by his own declaration. 85
Ark. 252; 90 Ark. 104; 105 Ark. 446.

*Longstreth & Longstreth,* for appellee.

SMITH, J. Appellee sued and recovered damages for
breach of the following contract of employment:

"North Little Rock, Arkansas, October 25, 1922.

"We hereby employ Mr. Priess for a period of three
months from date as sales manager, at a salary of $100
per week and 1 per cent. of the gross sales. He is to get
the same salary plus any railroad fare to put on a sale at
any place we might say.

                              "M. CARP,
                                "B. C.
                              "JOHN PRIESS."

The defense to the suit was that B. Carp, who signed
the name of M. Carp, his father, did so without author-
ity. On behalf of Priess, the plaintiff below, it was
insisted that B. Carp had the authority to make the con-
tract, and that, if he did not have the express authority,
it was within the apparent scope of his authority; and,
finally, that the contract was ratified by M. Carp.

Priess testified in his own behalf that the defendant,
M. Carp, owned stores in Little Rock and North Little
Rock, and one in Pine Bluff, and that Carp had employed
him as a special sales manager to put on a sale at Pine
Bluff, and that this sale had been successful and was
satisfactory to all parties, and that he was accustomed to
charge for such services, depending on the character of
the sale, as much as $500 per week. Priess' home was
in Kansas City, and he received a letter from M. Carp
advising that Carp wished him to put on a sale in Little
Rock. There was nothing in this letter about the terms
of the employment, but it was answered by Priess, and a
reply to this answer was written by B. Carp. In response
to this last letter, Priess wired that he was unwilling to

go to Little Rock unless M. Carp was there to talk terms. An answer to this telegram was forwarded to Priess at Greenwood, South Carolina, where he then was, from B. Carp, stating that he had full authority to close the deal, and for Priess to hurry to Little Rock, and that, in response to this telegram, he came to Little Rock, and there entered into the contract set out above. That he proceeded to work under this contract, and was employed for four weeks and four days, during which time he put on a highly successful sale, and that, at its conclusion, he was discharged without cause. He detailed the employment he had been able to secure during the remainder of the time covered by the contract, and this alone appears to have been taken into account by the jury, as no compensation was allowed by way of commission on sales, but there was no cross-appeal.

Priess further testified that M. Carp had a store in Little Rock, and another in North Little Rock, and that the father ran one and the son the other.

M. Carp, his son, B. Carp, and a daughter of M. Carp, who worked in the store with her brother, all testified that B. Carp had no authority to employ or to discharge an employee, and that M. Carp alone had this right. M. Carp also testified that he did not know Priess had been employed until October 31, and on November 4 he advised him that his son had no authority to employ him, and that he could not and would not pay the salary called for in the contract, but he did agree, by way of a compromise or settlement of the controversy which then arose, to allow Priess to work two more weeks under the contract, and he tendered the balance due for that period of time.

The conflicting testimony of the witnesses cannot be reconciled, and the jury's verdict is conclusive of this conflict, and we think the testimony of Priess is legally sufficient to support the finding by the jury that the son acted within the apparent scope of his authority, or, if not, that his unauthorized act was ratified by M. Carp.

Appellant then asked an instruction correctly defining the difference between a special agent and a general agent, and, after so doing, concluded with the declaration that "if you find from the evidence that the person who signed the contract was only an agent as a salesman for the defendant, then the contract made by the agent was without authority, and you will find for the defendant."

This instruction was properly refused, as it left out of account the question of ratification. Neither did it take into account the question of the apparent scope of the agent's authority.

Other instructions requested by appellant also left out of account either the question of the apparent authority of the agent or the question of the principal's ratification of the agent's unauthorized act.

Appellant requested, but the court refused to give, an instruction numbered 6, which reads as follows: "The court instructs the jury that, if you find from the evidence that a contract was signed by Ben Carp without the knowledge and consent of the defendant, and that the plaintiff entered into the employment of the defendant under said contract, and that, after notice came to the defendant that said plaintiff had a contract that was not authorized by him, and disaffirmed the contract with the plaintiff, but allowed the plaintiff to work for the defendant by agreement for two weeks after said disaffirmance of the contract, then the plaintiff can only recover from the defendant the amount due for work done within the two weeks under said new contract."

This instruction was properly refused. It assumes that there was no right of recovery if B. Carp signed the contract without the knowledge and consent of his father, the defendant, M. Carp, and defendant disaffirmed upon being advised of it, and thus leaves out of account the question of the apparent scope of the agent's authority.

It further tells the jury that, if defendant disaffirmed the contract, yet allowed Priess to work for two weeks after doing so, there could be no recovery except for the two weeks' work. The instruction does not require the

jury to find that Priess agreed to waive the damages for the breach of the contract if permitted to work the two weeks, but bars any other recovery except for the two weeks after the breach of the contract if defendant allowed him to work two weeks after the disaffirmance. If Priess is correct in his contention (and the jury so found), he had the right and was under the duty to render service, not only for the two weeks, but for all the unexpired time covered by the contract, and, if Priess did not waive his damages or agree that the contract should be annulled, he did not, by his continued performance of the contract for two weeks, lose his right to sue for its breach. The instruction was therefore properly refused.

No error appears, and the judgment is affirmed.